HAMILTON *vs.* THE ACCESSORY TRANSIT COMPANY, CORNE-LIUS VANDERBILT and others.

An injunction and receiver will not be granted against a corporation, at the suit of a stockholder, on the ground that the company has been dissolved, and its charter annulled by a foreign government, where the decree of dissolution is not absolute, but declares that the company shall be considered in existence for certain specified purposes; and where the company has property in this state, over which the foreign government had no jurisdiction, and it appears that it will be more conducive to the interests of all the stockholders, not to disturb the existing management and arrangements of the company, and that to grant the relief asked for, would produce irreparable injury to a majority of the stockholders.

If the decree of the foreign government, dissolving the corporation and annulling its charter, is recognized here as binding on the company and its stockholders, and by its terms the property of the company is to be seized and held subject to the order of commissioners therein appointed, to whom all right and title to the property is intended to be passed, a stockholder could not, in the courts of such foreign country, apply for a receiver, and therefore he cannot apply for a receiver here.

Hamilton *v.* Accessory Transit Company.

THE plaintiff sued in behalf of himself and other stock-holders of the Accessory Transit Company who should come in and contribute to the expenses of this suit, on a complaint, stating that ever since the 18th February, 1856, he has been, and now is, owner of 200 shares of the stock of said company; that previous to said 18th day of February, 1856, the Accessory Transit Company was a corporation created by the government of the state of Nicaragua; that on that day it was dissolved by a decree of that government, duly made and published; that the defendant Vanderbilt, and some other defendants, are, or pretend to be, officers of said company, and that some of them have property of the company to a large amount in their hands; that the directors and officers were all of them residents of the city of New York; and having annexed to his complaint a copy of the charter, and of the decree dissolving said company, he asked that the company be declared to be insolvent; that a receiver of the property be appointed; that the defendants be enjoined from parting with the property of the company; that Vanderbilt and other defendants be ordered to account for all the moneys received by them, from or for the company, and particularly, that Vanderbilt account for all moneys received from the Pacific Steamship Company and others; that the debts of the company might be paid, and the property distributed among the stockholders.

The defendants put in an answer denying, among other things, that the decree referred to in the complaint, was made or published by the government of Nicaragua; and on this denial the principal issue in the cause was formed. They also insisted that this court has not jurisdiction in the premises to wind up the affairs of the company, it being a foreign corporation.

The case was tried at a special term, before a judge without a jury, and the court found, as facts—That the decree was the act of the government *de facto* of Nicaragua; that the plaintiff was owner of the stock he claimed to own; that

a large amount of the property of the company was in the hands of the defendant Vanderbilt, who was president of said company; that the capital stock of said company consists of 78,700 shares, and that none of the owners had signified any objection to his management of its affairs except the plaintiff. The court further found, that it would be more conducive to the mutual interests of all the stockholders, not to disturb the present management and arragements of said company, but to leave the same to be determined by a majority of the stockholders, when they deem it proper to act in relation thereto; that it would be detrimental to the interests of the company to appoint a receiver, and that to grant the relief prayed for in the complaint would produce irreparable injury to the mass of the stockholders; and ordered judgment, that the complaint be dismissed with costs.

From this judgment the plaintiff appealed.

*D. D. Field,* for the plaintiff.

*Horace F. Clark,* for the defendants.

MITCHELL, P. J. The Rivas-Walker administration assuming the legislative and executive authority of Nicaragua, on the 18th of February, 1856, declared the charter of the Accessory Transit Company annulled, and the company dissolved and abolished, *except* for purposes thereafter mentioned. They then appointed persons called commissioners, to ascertain the amount due from the company to the state, and to hear the agents of the company, in Nicaragua, "with the privilege to defend the interests of their principals." It was expressly declared that the company was to be considered *in existence* for the purpose of conducting that examination, and for the purpose of being *collectively* responsible for such sums as might be ascertained to be due to the state, but for no other. The commissioners were to cause all the property of the company to be seized and to be held subject to the order of the board.

This was an act of despotic power, passed without notice to and without hearing the company, and contrary to the charter granted to it, which provided for the settlement of disputes between the company and the state, by commissioners to be mutually chosen. The government had no jurisdiction over the property of the company beyond the state of Nicaragua, and its decree (made without hearing the company) was a nullity as to such property. It may be presumed that as dictatorial power was assumed by that administration, it could have made a decree absolutely revoking the charter, and that this would have been deemed by other states valid, as to property in Nicaragua. But the decree does not absolutely annul the existence of the company, but on the contrary, keeps the company in existence, for certain purposes, amongst others, for the purpose of having the examination made as to the amount due from the company to the state, and for the purpose of being collectively responsible for the amount thus to be found due. If, therefore, we were bound to recognize that decree as to the rights of the company to be enforced here, or as to its property here, and to adopt the whole of. the decree, we must consider the company as still in existence. If in existence for any purpose, any other state than Nicaragua will consider it as existing for all purposes consistent with the interests of such other state and of its citizens. Under the decree, if recognized fully here, the company would be deemed in existence here, "for the purpose of being collectively responsible" for 'the amount due to the state of Nicaragua. The state could, consistently with that decree, sue the company here, and recover any amount due to the state from the company. The company could plead to such suit; could in a proper case enjoin proceedings in it; and could, in its own name, appeal from a judgment that might be obtained against it. In case of such a judgment in our courts, it might be compelled in its corporate name to assign its property to a receiver, to satisfy the judgment recovered against it. To enable it now to satisfy

such claim, it must be allowed to collect the debts due to it; to sell its property, and give deeds for it; and to do this in its own name. In this way, most readily can it be made "collectively responsible" for the amount that may be due to the state of Nicaragua.

The decree thus made can have no effect, except as to the property that might be actually grasped by the power that issued it. Its main object was (on its face) to seize the property of the company. Certainly our courts would not aid in the enforcement of that part of it, except that if the property actually within that state were seized there, and the title there lawfully transferred, the transfer of such property would be sustained here.

There are circumstances peculiar to this case that forbid the interference of our courts, in any measure, which would recognize that decree as valid in the United States. The charter was granted for the purpose of establishing canal and rail road communication by the isthmus of Panama from the Atlantic to the Pacific ocean. This was a matter of national interest to our country. Our government accordingly entered into a treaty with Great Britain, agreeing that the persons to be employed in making the canal, and their property to be used for that object, should be protected, from the commencement of the canal to its completion, by the governments of the United State and Great Britain, from unjust detention, *confiscation, seizure*, or *any violence* whatever. Mr. Vanderbilt, the president of this company, appealed to our government, claiming protection and redress against the decree of the government of Nicaragua. If, as is generally understood, (although the papers below do not directly show it,) our government has recognized this claim, our courts also must recognize it; on the same principle upon which they look to our government alone to ascertain our relations with foreign nations, or the character in which we are to regard them. If our government insists that this decree is a violation of the rights of our citizens, can our courts, even while the matter is in discussion,

assume a contrary position, or by any act carry out such decree?

If the decree were to be recognized here as entirely binding on the company and its stockholders, it would defeat the plaintiff's claim. For by the decree, the property of the company is to be seized and to be held, subject to the order of the board of commissioners appointed under the decree. By that decree, all right to the property is intended to be passed to the commissioners, and they, and not the stockholders, are to have title to it. The plaintiff, as a stockholder, could not, in the courts of Nicaragua, make the claim which he presents here, and cannot therefore succeed here.

Nor is the proposition that a partner in a concern which is abruptly terminated by an act of usurpation, but which may be shortly established, is entitled to a decree winding up the affairs of the concern, clear law. The rule is one of equity, and not of arbitrary law, and is therefore to be molded and applied only as equity may require.

The judgment of the special term should be affirmed with costs.

CLERKE, J. concurred.

PEABODY, J. (After stating the facts.) The court at special term has decided and adjudged, that the decree of the 18th of February, 1856, made by Patricio Rivas, then provisional president of the state of Nicaragua, by which the Accessory Transit Company was declared to be dissolved, was the act of the *de facto* government of Nicaragua. The company had existed until that time, under and by virtue of a charter granted by the government of that state. It was the creation of that state, and in the absence of any thing in the nature of a compact to the contrary, the state retained the power to revoke at pleasure the franchise it had granted. In the exercise of that power it made the decree referred to, and thereby dissolved it. It was strenuously insisted at the trial that the decree was not the act of the legally instituted gov-

ernment of the state. That question has been decided, however, at special term, and from the decision no appeal has been taken, and indeed the finding seems to be sustained by the evidence. The decree, being the act of the government, is effectual to produce the dissolution. That company then is dissolved, having a large amount of property in this state. That property, by the dissolution of the company, became, for all the purposes of use, preservation and disposition, destitute of an owner, and it is now without any person or organized body having a right to dispose of, direct, control, or even interfere with it. I am now assuming that the property, after the payment of the debts of the company, belongs to the stockholders. Whether it does in fact so belong, I will consider hereafter. But assuming for the present that it does, the case, which it is insisted this court will not entertain, stands thus: The plaintiff having an interest of $\frac{3}{787}$ in certain steamers and other property in this state, now in possession of persons who are joint owners with him, asks to have the property applied to the payment of the debts for which it is liable, and the balance, if any, divided, and his share ascertained and paid over to him. The company, to the uses of which it was dedicated, has ceased to exist, and of course has ceased to have any right to it. The plaintiff's title to the share he claims, is placed beyond all question by the findings of the judge at special term. Under these circumstances, will this court interfere on his application? The property, said to amount to millions, is for practical purposes derelict. No person has a right to administer it, except by authority of the court. The parties now in possession of it have some claims to it, or rather claims against it, as security for moneys said to be due them. No one at present is authorized to settle their claims. They are claims *in rem.* Unless there is some objection to the jurisdiction, arising from the manner in which the parties have come to their rights, the case is peculiarly one for the interposition of this court as a court of equity. Ordinarily a property in this condition could prop-

Hamilton *v.* Accessory Transit Company.

erly be the subject of administration in this court, and I see nothing in the manner in which this has fallen to the present owners, to make it an exception. Under such circumstances, it would ordinarily be the right of any person having an interest in the property, to have it administered as the plaintiff herein asks to have it, and the mode of doing it would be the very mode urged here—the appointment of a receiver with powers to take charge of the property, convert it into money, pay the debts of the company, and bring the balance into court, or at least report it to the court, and then to call on the court to distribute the residue among the parties entitled to it.

This, however, is on the assumption that the plaintiff, as a stockholder, is entitled to a distributive share of the property of the corporation, now that its existence is terminated by dissolution. He is a shareholder, and his rights in virtue of that fact—in the absence of all express provision for them in the charter or elsewhere—depend on the law applicable generally to stockholders of a dissolved corporation. He must have rights and interests in it to enable him to prosecute this suit; and in the inquiry as to his rights we encounter a difficulty which lies at the foundation of the plaintiff's case, and which singularly enough is not suggested by the answer, and nothing in the case shows that it was urged on the trial below. It seems to me to be fatal to the plaintiff, however, even at this late stage of the case. This corporation was created, had its career, and finally terminated its existence in a foreign country, to wit, Nicaragua. When it was dissolved, the consequences of that act to stockholders and creditors, and all interested in it, depended on the law of that state. Of course the rights of the plaintiff herein depend entirely on that law; and he has omitted in his complaint to plead it. Whether as a former stockholder he has a right to a distributive share of the property, without which he has no standing in court, depends on the law of the country in which the company existed and was dissolved. (*Ang. & Ames on*

Hamilton *v.* Accessory Transit Company.

*Corp.* 195, 196 *and* 779.)   If we are to decide on his rights, we must do so on the strength of the law by which they are governed, and of that law we have no judicial knowledge. The laws of New York, of which law we have judicial knowledge, do not apply, and we cannot see whether the plaintiff has any interest in the effects of the late company or not.   In the absence of all information from the pleadings or evidence, we are bound to intend that the common law prevails there, and of that law we may take judicial cognizance.   At common law, on the dissolution of a corporation, the real estate reverted to the grantor or his heirs, and the personal property vested (in England) in the king as the sovereign, and in our country vests in the people as succeeding to his right and prerogative.   If we are to act upon these facts as they now stand pleaded and proved, we must give effect to them under the light of the common law, and by that law the plaintiff has no right in the subject matter of this suit, and of course has no standing in court.   His complaint, therefore, fails to state facts sufficient to constitute a cause of action.   It fails to state facts which entitle him to any share or interest in the assets or property concerning which he asks the interposition of this court.   He has no rights, according to his own showing, and the judgment below dismissing his complaint should be affirmed with costs, unless he, within twenty days, elects to amend his complaint in this respect, in which case he should have leave to do so on the usual terms.

Judgment affirmed.

[NEW YORK GENERAL TERM, November 2, 1857.   *Mitchell, Clerke* and *Peabody,* Justices.]